IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMMIE YERKS,

       Plaintiff,         OPINION AND ORDER

  v.
                      19-cv-595-wmc

SANDRA MCARDLE, MAXIM
PHYSICIAN RESOURCES, JOLINDA
WATERMAN, LORI ALSUM, and
DR. EILEEN GAVIN,

       Defendants.

---

*Pro se* plaintiff Jammie Yerks, a prisoner at the Wisconsin Secure Program Facility, is proceeding against defendants on Eighth Amendment deliberate indifference and Wisconsin negligence or medical malpractice claims arising out of an alleged three-month delay in providing the narcotic medication Tramadol for his chronic shoulder injury. (Dkt. #25.) Plaintiff is proceeding against state employees represented by the state Attorney General's office, as well as against private contract employees represented by their own, respective counsel. Before the court is plaintiff's renewed motion for assistance with the recruitment of counsel and a court-appointed expert witness (dkt. #62), along with related motions to extend the deadline to respond to defendants' motions for summary judgment or hold summary judgment proceedings in abeyance (dkt. ##84, 90). For the following reasons, the court will deny without prejudice plaintiff's request for help recruiting a lawyer and for appointment of an expert witness, while granting plaintiff a short extension of an additional 30 days to file his summary judgment opposition and extending defendants' reply deadline commensurately.

OPINION

As plaintiff is well aware, a *pro se* litigant does not have a right to counsel in a civil case. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Even so, a district court has discretion to help *pro se* litigants find a lawyer to represent them, provided they meet three requirements. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007); *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010). Plaintiff has satisfied two of these requirements, having shown that (1) he is unable to afford counsel and (2) he made reasonable efforts on his own to find a lawyer to represent him. (Dkt. ##3-1 at 2-6, 12.) As for the third requirement, the remaining question is "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt*, 503 F.3d at 655.

As an initial matter, almost all of this court's *pro se* litigants would benefit from the assistance of counsel. Unfortunately, there are not enough lawyers willing to take these types of cases to go around. Thus, the court must thus decide "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring).

At this stage in particular, plaintiff must prepare and file responses to defendants' summary judgment motions. However, to defeat defendants' motions, plaintiff does not yet need to prove his case -- he need only establish whether there is a genuine dispute of material fact for a jury to resolve. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (a court's sole task at summary judgment is to decide, based on the record,

whether there is any material dispute of fact requiring a trial).  Having considered plaintiff's detailed motion and supporting documentation, and reviewed defendants' motions, the court is unpersuaded that plaintiff cannot accomplish this task without a lawyer's help, at least with respect to his federal claims.

Plaintiff's submissions to date demonstrate an understanding of the relevant legal and factual issues in this case; they have also been clear and easy to follow.  Plaintiff presses that this is only because he has had substantial assistance in preparing all his submissions by what he describes as "an experienced prison litigator," who will not be able to continue assisting him for much longer.  The general rule is that a litigant's reliance on a fellow inmate for assistance in drafting legal filings does not factor into a court's analysis when deciding whether to assist with the recruitment of counsel.  *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) ("[T]he fact that an inmate receives assistance from a fellow prisoner should not factor into the decision whether to recruit counsel.").  In other words, the assistance of another prisoner does not weigh in favor of or against the decision to recruit counsel.  This is because receiving assistance from a jailhouse lawyer is *not* proof that a plaintiff is incapable of presenting his own case.

To the question of plaintiff's own capabilities, the court has little to go on, beyond the assertions in filings he represents were prepared by someone else.  To begin, plaintiff attests that he is of "average intelligence," and does *not* allege that he is unable to read or to understand his claims.  (Dkt. #3 at 3.)  Although plaintiff represents that his pain medication causes him to feel "mentally clouded," he does not specify how often this feeling actually impedes his ability to litigate his case beyond a general difficulty reviewing

3

materials, retaining details, and drafting "with any reasonable efficiency or effectiveness." (Dkt. #62 at 6.)  Specifically, as to writing, plaintiff attests that he is right-handed, but has limited use of his right arm due to his shoulder injury; therefore, he cannot efficiently write or type without "extreme discomfort," even after taking pain medication.  (Dkt. #3 at 2.)

However, if there is a question of plaintiff needing more time because of physical and mental limitations, plaintiff may ask the court for an extension.  Indeed, the court will grant him one in this order.  Similarly, while plaintiff may soon lose the help of his "experienced prison litigator," and attests that he has not yet found another inmate as competent to replace him, plaintiff does not attest that he will be unable to find enough assistance to prepare his summary judgment response.  Moreover, until plaintiff tries, and thus allows the court to assess his capabilities *independent* of this particular inmate, there is no basis to infer that he needs the assistance of counsel to complete the tasks immediately at hand.

Plaintiff further emphasizes the many challenges he faces as a *pro se* incarcerated litigant.  Although the court is sympathetic to those challenges, there is, again, no evidence that plaintiff is any more limited than most prisoner litigants.  For example, plaintiff states that he is untrained in the law and explains how being incarcerated at his institution generally places significant limitations on his ability to research and prepare filings, which is true of nearly all incarcerated litigants.  More specifically, plaintiff represents that he has limited law library time, and is given priority access to the library only when he has a court deadline, but these circumstances, although not ideal, are also typical of most prisoners

litigating cases before this court.  While plaintiff further claims his institution recently did away with a word processing program that allowed inmates to prepare typed documents efficiently, thus sparing legal aides from having to invest their own money in typing, printing, and mailing legal documents for inmates they are assisting, this inconvenience, too, is not unique to plaintiff, nor is it evidence of plaintiff's inability to litigate this case.

Next, plaintiff argues that a lawyer would be able to conduct discovery much more effectively, by uncovering any other potential defendants and deposing certain individuals. Again, however, the operative question is not whether a lawyer would do a *better* job than the plaintiff, which will almost always be true, but rather whether a lawyer is *necessary* to pursue plaintiff's claims.  Although plaintiff details the policy and procedural information he believes he needs to prove his claims,[1] and suggests that there may be more individuals involved than those he has already named as defendants, his claims *turn on* the specific conduct of individual defendants to which *he* should be able to attest personally.  Moreover, plaintiff fails to identify what specific information he has attempted to seek through discovery, or what he has requested and been denied, and how a lawyer would be any more successful.  Regardless, most discovery tools other than depositions can be used to obtain information from defendants, including any applicable policy and procedure and the

---

[1] Indeed, a violation of prison policy does not give rise to a federal constitutional claim, nor do Department of Corrections administrative policies provide prisoners with private causes of action. *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019); *see also Harris v. Manlove*, 799 F. App'x 423, 426 (7th Cir. 2020) ("a violation of a state policy by itself does not give rise to a constitutional claim") *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 74-79, 307 N.W.2d 256, 266-68 (1981) (right of action to enforce statute or regulation does not exist unless directed or implied by legislature).  At most, such policies *might* be a relevant consideration for a jury at trial.

identities of individuals allegedly involved in plaintiff's medical treatment at issue here.[2]

Regardless, just as with responding to defendants' motions for summary judgment, plaintiff

is in a good position to craft discovery requests because he has personal knowledge of the

circumstances surrounding the lawsuit, including what he did and what defendants or other

individuals did (or did not do) in response to his complaints of ongoing, severe pain.  While

plaintiff suggests that defendants would be more forthcoming if an attorney submitted

discovery requests, because of "the bureaucratic structure" and "the close

interdepartmental relationship" between prison medical staff and staff that review

grievances (dkt. #62 at 5), defendants' discovery obligations are the same whether plaintiff

is represented by counsel or not.  At bottom, if plaintiff believes that defendants have not

complied with appropriate discovery requests, he can file a motion to compel their doing

so, just as outlined in the court's preliminary pretrial conference order.  (Dkt. #46 at 10.)

Plaintiff further notes that he is litigating complex claims arising from a delay of

medical care without the benefit of medical training, and doing so against three different

groups of defendants, making the logistics and issues more complex still.  As a threshold

matter, again, nearly all *pro se* litigants are untrained in medicine, and many bring similar

medical care claims that encompass long periods of time against multiple defendants.

There is no categorical rule that all prisoners challenging the adequacy of their medical care

---

[2] In his motion for assistance with recruiting counsel, plaintiff takes issue with the court's dismissal at the screening stage of his John and Jane Doe Class III Committee Member defendants.  (Dkt. #62 at 5.)  However, the court indicated in its screening order that plaintiff was free to move to amend his complaint with allegations tying any individual member to the alleged unconstitutional conduct.  (Dkt. #25 at 16.)  Plaintiff simply never did so with respect to these Doe committee member defendants, much less shown that the current defendants prevented him from taking steps to uncover necessary evidence as to the committee members and their actions.

are entitled to counsel. *See Williams v. Swenson*, 747 F. App'x 432, 434 (7th Cir. 2019) (affirming district court's denial of request for counsel in medical care case); *Dobbey v. Carter*, 734 F. App'x 362, 364 (7th Cir. 2018) (same); *Romanelli v. Suliene*, 615 F.3d 847, 853 (7th Cir. 2010) (same). As noted, given his assertions that his filings to date have largely been prepared by another inmate, the court has no basis to infer that plaintiff's abilities to gather basic evidence and present legal arguments are below those of hundreds of other prisoners who bring civil rights cases in this court each year.

Finally, for the most part, plaintiff's claims do not yet appear to require medical expertise or mastery of complex legal issues. Even in cases involving more complex medical issues, whether a claim should proceed to trial is likely to turn on more straightforward, bedrock facts. *E.g., Redman v. Doehling*, 751 F. App'x 900, 905 (7th Cir. 2018) ("Redman could litigate his claims himself because they turned on historical facts as opposed to medical evidence"). Here, plaintiff's Eighth Amendment claims are based on defendants' alleged indifference to his medical need during a discrete, approximately three-month delay between the renewal of plaintiff's Tramadol prescription and his receipt of the medication. Regarding his federal claims, defendants' summary judgment submissions are primarily devoted to arguing that the medical records show they responded appropriately to plaintiff's pain complaints, at least to the extent they knew about them, or that they were not personally involved one way or the other. (Dkt. ##69 at 9-15, 72 at 10-14, 81 at 4-13.) In opposing these arguments, plaintiff can rely on those same records, as well as his own firsthand experience, assuming he is willing to attest to the same allegations in his

complaint that he continually notified staff that he was experiencing severe shoulder pain without relief.  (Dkt. #1 at 8-14.)

As a separate matter, plaintiff asks the court to appoint an expert witness, so that he can prove "the availability of reasonable, viable alternatives to those treatments recommended and prescribed" for his pain.  (Dkt. #62 at 4.)  Plaintiff does not explain the relevance of this information to a straightforward claim of deliberate indifference to his prescription needs, but to the extent he means to cast doubt on the treatment he received while waiting for Tramadol to be approved, the court is not persuaded that he will need an expert to prove his federal claims should he proceed past the summary judgment stage to trial.  Moreover, Rule 706 of the Federal Rules of Civil Procedure allows a court to appoint a neutral expert to help the court or jury interpret complex information and disputed issues, "not to represent the interests of one party" or to bolster a party's case.  *DeJesus v. Godinez*, 720 F. App'x 766, 772 (7th Cir. 2017); *see also Dobbey v. Carter*, 734 F. App'x 362, 364-65 (7th Cir. 2018) ("But Federal Rule of Evidence 706 allows appointment of an expert witness if necessary to help the court understand the issues, not to assist a party in preparing his case.").  Finally, even if a medical expert were to disagree with defendants about plaintiff's treatment, such a disagreement is generally not enough to sustain an Eighth Amendment claim.  *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.")

That said, the exception may be plaintiff's state law negligence and medical malpractice claims.  Several defendants seek summary judgment on these claims on the ground that plaintiff has failed to obtain expert testimony establishing the standard of care he was owed and that this standard was breached.  (Dkt. ##69 at 15-17, 81 at 13-14.)  However, jurisdiction over these state law claims rests on their relationship to his federal claims.  *See* 28 U.S.C. § 1367.  If the federal claims are resolved before trial, the general rule is that the court must decline to exercise jurisdiction over any remaining state law claims.  *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019), making it premature at best to assist plaintiff by appointing an expert witness on state claims that this court may never address.  Thus, it makes more sense to put the state law claims on hold while the parties complete summary judgment briefing on plaintiff's federal claims.  Once the court resolves the summary judgment motions as to the federal claims, it will consider the appropriate next steps, including possible recruitment of counsel and appointment of an expert.

In short, a lawyer would make the litigation process easier for a *pro se* prisoner plaintiff nearly always, but this court is not persuaded that a lawyer is *necessary* at this stage of this specific case.  Trial may be another matter, but for now the court will deny without prejudice plaintiff's renewed motion for recruitment of counsel and appointment of an expert witness.  Even though the court will similarly not hold summary judgment proceedings in abeyance, the court will grant plaintiff an additional 30 days to prepare and file his responses.  Accordingly, plaintiff should do his best to do so within that new, extended deadline.  Once summary judgment briefing is complete, should the court's

review reveal that the case truly comes down to complex legal or medical issues that require

expert testimony or the assistance of counsel, the court will take up those questions then.


ORDER

IT IS ORDERED that:

1) Plaintiff Jammie Yerks' motion for assistance with the recruitment of counsel and an expert witness (dkt. #61) is DENIED without prejudice.

2) Plaintiff's motions to extend his deadline to respond to defendants' motions for summary judgment or to hold summary judgment proceedings in abeyance (dkt. ##84, 90) are GRANTED in part and DENIED in part.  Summary judgment proceedings are not stayed, but plaintiff may have until December 6, 2021, to file his responses to defendants' summary judgment motions, and defendants' reply deadline is extended to December 16, 2021.

Entered this 5th day of November, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge